# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN N. CORTEZ,<br><br>                         Petitioner,<br>  vs.<br><br>KEN CLARK, WARDEN,<br><br>                        Respondent. | CASE NO. 10cv0147-WMc<br><br>**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

On January 19, 2010, Adrian Nathaniel Cortez ("Petitioner"), a California state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus by a Person in Custody pursuant to 28 U.S.C. § 2254. [Doc. Nos. 1, 8.] In his Petition, Petitioner alleges two grounds for relief: (1) there was insufficient corroboration of the accomplice-witness testimony presented at trial, and (2) the trial court erred in instructing the jury not to speculate as to why the accomplices were in custody. [Doc. No. 4.] Under the heading of his third ground for relief, Petitioner joins in "any" of the arguments beneficial to him found in a co-defendant's opening brief seeking state habeas relief. [Doc. No. 4.] Petitioner properly exhausted his first two claims at the state level, with the California Court of Appeal denying relief on the merits on October 2, 2008 and the Supreme Court of California denying review on January 14, 2009. [Lodgment Nos. 2, 4.]

On March 19, 2010, after the original Petition was dismissed without prejudice for failing

to name a proper respondent and failing to satisfy the filing fee requirement, Petitioner filed a First Amended Petition with Ken Clark as the new respondent. [Doc. Nos. 2, 3, 4.] On June 14, 2010, Respondent Ken Clark ("Respondent") filed an Answer. [Doc. No. 13.] After being granted an extension of time, Petitioner filed his Traverse on October 19, 2010. [Doc. No. 26.] On January 14, 2011, after both parties consented to magistrate jurisdiction, this case was reassigned to Magistrate Judge William McCurine, Jr. pursuant to 28 U.S.C. § 636(a). [Doc. Nos. 4, 13, 30.] After reviewing the First Amended Petition [Doc. No. 4], Respondent's Answer and Memorandum of Points and Authorities in support thereof ("Answer") [Doc. No. 13], Petitioner's Traverse [Doc. No. 26], and all of the supporting documents and pertinent state court lodgments, the Court **DENIES** the Petition for the reasons stated below.

## II. STATEMENT OF FACTS

Title 28, United States Code, section 2254, subsection (e)(1) provides: "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see also Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that federal courts are required to "give great deference to the state court's factual findings."). Accordingly, the following facts are taken from the California Court of Appeal's opinion. [Lodgment No. 2, pp. 1-7.]

FACTUAL AND PROCEDURAL BACKGROUND

### I. Introduction

A jury found Adrian Nathaniel Cortez and Jahaziel Fausto guilty of conspiracy to commit assault with a deadly weapon or with force likely to produce great bodily injury (Pen. Code,[1] §§ 182, subd. (a)(1), 245 subd. (a)(1) (count 1)) and first-degree murder (§ 187 subd. (a) (count 2)). With respect to count 1, the jury found that each defendant committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), each defendant was a principal in the offense, and at least one principal personally used a firearm within the meaning of section 12022.53, subdivisions (b) and (e)(1), each defendant was a principal in the offense and at least one principal personally and intentionally discharged a firearm causing great bodily injury or death within the meaning of section 12022.53, subdivisions (d) and (e)(1). In addition, with respect to count 2, the jury found that Fausto personally used a firearm in the commission of the offense (§ 12022.53, subd. (a)).

Cortez waived his right to a jury trial on two prior conviction allegations and admitted that

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

he had suffered a prison prior (§§ 667.5, subd. (b), 668) and a strike prior (§§ 667.5, subds. (b)-(i), 1170.12). The trial court sentenced Cortez to a total term of 76 years to life in prison and sentenced Fausto to a total term of 50 years to life in prison.

On appeal, Cortez claims that there is insufficient corroboration of the testimony of two accomplices presented at trial to support his convictions. Cortez also claims that the trial court erred in instructing the jury not to consider why the accomplices were in custody. Fausto claims that the trial court erred in precluding a potential defense witness from testifying on the ground that the witness refused to submit to full cross-examination, invoking her privilege against self-incrimination. In a related claim, Fausto maintains that the prosecutor violated Fausto's constitutional right to present witnesses on his own behalf by improperly causing the witness to invoke her privilege against self-incrimination, leading the trial court to refuse to allow the witness to testify. Fausto also claims that the trial court erred in modifying a jury instruction that Fausto requested concerning imperfect self-defense. Both defendants also raise numerous claims pertaining to their sentences.

We reverse the judgment as to the defendants' sentences on count 1, vacate the defendants' sentences, and remand the matter for sentencing. We affirm the judgment in all other respects.

**II. Factual Background**

A.   *The People's evidence*

1.   *The murder*

On October 16, 2004, Ignacio Manzo (Ignacio) was at a park in Chula Vista along with several friends and his brother, victim Arturo Manzo (Arturo). Arturo was a member of the Otay gang. At some point during the day, Arturo went to a nearby restaurant. Around the same time that Arturo was walking back from the restaurant to rejoin the group in the park, Fausto approached. Fausto began asking the people in the group, "Where are you from?"[2] Moments later, as Arturo approached the group, Fausto asked Arturo the same question. Arturo responded by saying, "'Otay.'" Fausto then began shooting at Arturo with a gun. Ignacio ran for cover. Shortly thereafter, Ignacio saw Fausto leave the scene in a waiting car.

Arturo died as a result of the gunshot wounds he received. An autopsy revealed three gunshot wounds, two in Arturo's torso, and one in his arm. Police found a total of five shell casings from a .32-caliber gun within 15 feet of Arturo's body.

2.   *Accomplice testimony*

Varrio Chula Vista (VCV) gang members Raymond Pacheco and William Parra testified at trial. Pacheco testified that in October 2004, he was a VCV gang member as were Cortez, whom he knew as "Trusty," and Fausto, whom he knew as "Bullet." Cortez was the leader of the VCV gang. Pacheco stated that in the Fall of 2004, a member of the Otay gang - a rival gang to VCV - shot VCV member Benjamin "Rocky" Moreno. On October 16, 2004, several gang members held a meeting at which this shooting was discussed. Cortez, Pacheco, Parra, Fausto, and Jacob Sowder were among the VCV gang members who attended the meeting. At the meeting, Cortez asked whether anyone would be willing to shoot an Otay gang member in retaliation for the shooting for Moreno, and Fausto and Sowder

---

[2] Ignacio agreed with the prosecutor that he understood this question to be "a reference to a gang."

        volunteered to do so. Parra agreed to drive. Cortez gave Fausto a gun. As the meeting disbanded, Fausto asked Pacheco if he wanted to go along with Fausto to the shooting. Pacheco responded in the affirmative.

        Pacheco testified that he, Parra, Fausto, and Sowder left the meeting and got into Parra's car. Parra drove the group around looking for Otay gang members. When they saw several people standing around in the park, Parra parked the car. Pacheco saw Fausto get out of the car and approach the people who were standing in the park. Pacheco then saw Fausto fire a gun at Arturo. Arturo fell to the ground, and Fausto fired more shots at Arturo while he was on the ground. Fausto ran back to Parra's car. Once in the car, Fausto said that he got "the guy from Otay."

        Parra testified that on October 16, 2004 Cortez asked for volunteers to retaliate against the Otay gang for shooting Moreno. Parra stated that Cortez gave Fausto a gun, and that Fausto shot Arturo. Parra stated that he accompanied Cortez to Alec Pojas's house a few days after Arturo was shot. Cortez sold Pojas a gun that was similar in appearance to the gun that Parra had seen Cortez give to Fausto on the night Arturo was killed.

        3.    *Gang evidence*

        Sergeant Eric Thunberg of the Chula Vista Police Department testified as an expert on criminal street gangs. Sergeant Thunberg explained various aspects of gang culture, including the notion that gang members are expected to assist the gang in retaliating against anyone who shows disrespect for the gang. Sergeant Thunberg described the history of the VCV gang, noting that it was first documented as a gang in the 1970s. The Otay gang is a rival gang to the VCV gang. Sergeant Thunberg opined that the charged offenses were committed for the benefit of the VCV gang, to retaliate against Otay for its shooting of a VCV gang member.

    B.    *The defense*

Fausto testified at trial. He admitted that he was a VCV gang member and that he had shot Arturo. Fausto denied that there had been a meeting of VCV gang members on October 16, 2004 at which Cortez requested that VCV members retaliate against the Otay gang. Fausto claimed that on the evening in question, he had been planning to attend a party he had learned about from his friend, Katrina Lopez. Parra drove Fausto, Pacheco and Sowder around, looking for the party. Fausto saw a group of people in the park and got out of the car to see if anyone in the group knew the location of the party. Fausto testified that Arturo came towards him in an aggressive manner while shouting Arturo's gang's name. Fausto stated that he shot Arturo because he believed Arturo was about to physically attack him.

Cortez's sister and brother-in-law testified that Cortez was living in Murietta, 60 miles north of Chula Vista, in the weeks preceding and following the killing. Cortez's sister testified that Cortez attended a family barbeque and babysat for a neighbor in Murietta on the day and evening of the killing.

    C.    *Rebuttal*

The People presented evidence that on September 15, 2004, a Chula Vista police officer stopped a car that he suspected had been involved in a difference [sic] shooting incident. The car was registered to Moreno. Cortex and Moreno were in the car. During that contact with police, Cortez fled the scene.

[*See* Lodgment No. 2, pp. 1-7.]

## III.  STANDARD OF REVIEW

Title 28, United States Code, section 2254, subsection (a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district judge shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254, subsection (d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### A.  Clearly Established Federal Law

When determining what constitutes "clearly established federal law" under section 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  A state court's decision is "contrary to" clearly established United States Supreme Court precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06, 412 (2000); *Lockyer v.*

1  *Andrade*, 538 U.S. 63, 73 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). A state
2  court decision does not have to cite to or even demonstrate an awareness of clearly established
3  Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision
4  contradict such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002).

5        **B.     Unreasonable Application of Federal Precedent**

6       A state court decision may involve an "unreasonable application" of Supreme Court
7  precedent, "if the state court identifies the correct governing legal rule from [Supreme] Court's
8  cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529
9  U.S. at 407-08. Alternatively, an unreasonable application may also be found, "if the state court
10 either unreasonably extends a legal principle from [Supreme Court] precedent to a new context
11 where it should not apply or unreasonably refuses to extend that principle to a new context where
12 it should apply." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark*, 331 F.3d at
13 1067. An unreasonable application of federal law requires the state court decision to be more than
14 incorrect or erroneous. *Lockyer*, 538 U.S. at 75-76. Instead, the state court's application must be
15 "objectively unreasonable." *Id*. at 76.

16      Where there is no reasoned decision from the state's highest court, the Court "looks
17 through" to the last reasoned stated-court decision. *Ylst v. Nunnermaker*, 501 U.S. 797, 801-06
18 (1991); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003). However, if the dispositive state court
19 order does not "furnish a basis for its reasoning," the federal court considering the habeas petition
20 must conduct an independent review of the record to determine whether the state court
21 unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.
22 2000); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

23           **IV. DISCUSSION**

24      Petitioner asserts two specific grounds for federal habeas relief. First, the accomplice
25 testimony admitted at trial was not sufficiently corroborated, and thus, was improper. [Doc. No.
26 4.] Second, the trial court erred when it instructed the jury not to speculate as to why the two
27 testifying accomplices were in custody. [Doc. No. 4.] Petitioner also asserts, only with less
28 specificity, a third ground for habeas relief. [Doc. No. 4.] Rather than allege a constitutional

1  violation and provide supporting factual context as he did in his first two grounds for relief,
2  Petitioner instead asserts an additional ground for relief exists somewhere in a co-defendant's state
3  habeas brief. [Doc. No. 4.] Without providing any further detail, Petitioner joins in any beneficial
4  and applicable arguments contained within his co-defendant's state brief. [Doc. No. 4.]

### A.      Claim 1: Uncorroborated Accomplice-Witness Testimony

Petitioner alleges the accomplice testimony of Raymond Pacheco and William Parra admitted at trial was not sufficiently corroborated as required by California Penal Code section 1111. [Doc. No. 4, p. 6.] Accordingly, Petitioner argues this lack of corroboration violated his rights to a fair trial and due process, as guaranteed by the Sixth, Fifth, and Fourteenth Amendments to the United States Constitution. [Doc. No. 4, p. 6.]

In its Answer, Respondent contends there is "no federal constitutional requirement that accomplice testimony be corroborated." [Doc. No. 13, p. 6.] In supporting this contention, Respondent cites case authority from the Fifth, Eighth, Ninth and Tenth Circuits, which have all specifically and unequivocally held there is no such constitutional requirement. [Doc. No. 13, pp. 8-9.] Respondent further alleges that Petitioner "has not and cannot identify any Supreme Court decisions establishing a constitutional requirement that the testimony of an accomplice-witness be corroborated." [Doc. No. 13, p. 8.]

In his Traverse, Petitioner articulates his primary objection to the accomplice testimony relates to two important events: (1) the pre-murder meeting, and (2) the procurement of the murder weapon. [Doc. No. 26, pp. 1-6.] Petitioner argues there were no independent, non-accomplice sources presented at trial to corroborate the accomplice testimony regarding these two events. [Doc. No. 26, pp. 1-6.] However, Petitioner cites no federal law in support of his contention that accomplice-witness testimony be entirely and independently corroborated.

Petitioner's claim that the accomplice testimony was not sufficiently corroborated fails for two reasons. First, there is no federal constitutional requirement that accomplice-witness testimony be corroborated. Second, even in the absence of a federal corroboration requirement, the accomplice-witness testimony was found to be sufficiently corroborated as required by California law.

### 1. There is no federal constitutional requirement that accomplice-witness testimony be corroborated.

Currently, there are no Supreme Court decisions requiring corroboration of accomplice-witness testimony. This fact was pointed out by the Tenth Circuit as recently as 2007. *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007). On its way to reaching this conclusion in *Cummings*, the Tenth Circuit relied heavily on holdings in other circuits: "Many of our sister circuits have specifically held that there is no such constitutional requirement [of corroboration]." *Cummings*, 506 F.3d at 1237 (citing *Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993); *Brown v. Collins*, 937 F.2d 175, 182 n. 12 (5th Cir. 1991)). Not only is corroboration not expressly required, the circuits also agree that "[t]he Constitution does not [expressly] prohibit convictions based primarily on accomplice testimony." *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) (citing *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985) ("The Constitution says nothing about accomplice testimony."); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."); *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980) (holding that a state law requiring independent corroboration of accomplice testimony is not controlling on collateral review by federal court)).

Thus, there is healthy consensus among federal circuit courts that (1) there is no affirmative federal corroboration requirement and (2) there is no express constitutional prohibition on the use of uncorroborated accomplice testimony.

In his Petition, Petitioner provides citations *only* to California law. CAL. PENAL CODE § 1111. As noted above, no analog to California's corroboration requirement exists in the federal system. Therefore, Petitioner's claim is based solely on a perceived error of state law. Claims based solely on errors of state law cannot support petitions for federal habeas relief. 28 U.S.C. § 2254(d)(1); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Although Petitioner follows up, in his Traverse, with citations to federal case law, these citations do not involve the issue of accomplice-witness corroboration, even under the most liberal construction. Accordingly, Petitioner's claim that the accomplice testimony was not sufficiently corroborated fails because it was neither contrary to,

1 nor involved an unreasonable application of, clearly established federal law.

### 2. Even in the absence of a federal corroboration requirement, the accomplice-witness testimony was found to be sufficiently corroborated as required by California law.

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). However, in certain limited circumstances, the United States Supreme Court has held that claims tethered solely to state laws can rise to the level of federal constitutional violations when the determination of state law is "so arbitrary or capricious . . . as to constitute an independent due process . . . violation." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Petitioner's first claim falls squarely under the *Jeffers* standard, as it is linked solely to a violation of state law, namely California Penal Code section 1111. Under *Jeffers*, this claim fails because the state courts' determination of the state law issue was supported by tangible sources and an objectively reasonable rationale. Thus, the state court's decision was not arbitrary or capricious.

Section 1111 provides:

> A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.
>
> An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.

CAL. PENAL CODE § 1111.

In sum, California law provides that a conviction cannot be based upon accomplice testimony unless the testimony is corroborated by other non-accomplice sources. Petitioner is correct that Pacheco and Parra both qualify as accomplices under California's accomplice-witness statute. [Doc. Nos. 4, 26.] The two were present at the pre-murder meeting and they rode in the same automobile to and from the scene with the shooter, Fausto. [Lodgment No. 2, pp. 1-7.] Petitioner is also correct that, as accomplices, their collective credibility is suspect under the circumstances. [Doc. Nos. 4, 26.] As accomplices, their testimony, to be properly used at trial under California law, required corroboration.

As explained by the California Court of Appeal in its unpublished opinion analyzing this claim, the concept of "corroboration" falls well short of proof beyond a reasonable doubt. [*See* Lodgment No. 2.] "To corroborate the testimony of an accomplice, the prosecution must present 'independent evidence,' that is, evidence that 'tends to connect the defendant with the crime charged' without aid or assistance from the accomplice's testimony." *People v. Abilez*, 41 Cal. 4th 472, 505 (2007) (citing *People v. Perry*, 7 Cal. 3d 756, 769 (1972)). Evidence is sufficiently corroborative if it tends to implicate the defendant by relating to some act or fact that is an element of the crime being charged. *People v. Richardson*, 43 Cal. 4th 959, 1024 (2008). The evidence need not prove all the elements of the charged crime; the evidence can be circumstantial and it need not be "substantial" or capable of "standing alone." *Perry*, 7 Cal. 3d at 769.

Although the Court of Appeal found the accomplice testimony to be suspect, it did not find the testimony to be incredible, citing "considerable" evidence corroborating the testimony of both accomplices. [Lodgment No. 2, p. 8.] The appellate court utilized four non-accomplice sources - Ignacio Manzo (the brother of the victim), Chula Vista Police Department Sergeant Thurberg (a local gang expert), Alec Pojas (a person familiar with both the VCV and Otay gangs), and a jailhouse note penned by the Petitioner to corroborate four crucial aspects of the accomplice testimony. [Lodgment No. 2, pp. 8-12.] These four aspects are as follows: (1) the killing of Arturo Manzo was in retaliation for the Otay gang's shooting for VCV gang member Moreno; (2) Petitioner was a VCV gang member; (3) Petitioner sold, and thus was connected to, the murder weapon after the fact; and (4) Petitioner demonstrated consciousness of guilt in his jailhouse note to a fellow VCV gang member. [Lodgment No. 2, pp. 8-12.]

Drawing from these independent, non-accomplice sources, the California Court of Appeal concluded the "record contains more than 'slight' evidence tending to corroborate Parra's and Pacheco's testimony connecting [Petitioner] to the offenses charged." [Lodgment No. 2, p. 12 (citing *People v. Richardson*, 43 Cal. 4th 959, 1024 (2008).] Although these non-accomplice sources did not prove every element of the charged crimes, and although they did not corroborate every last detail of the accomplice testimony, the state appellate court found these sources were sufficient to connect Petitioner with the charged crimes. [Lodgment No. 2, p. 12.]

As per *Jeffers*, when conducting a federal habeas review of a claim stemming solely from a violation of state law, a federal court is tasked with reviewing the state court appellate record only for "arbitrary" or "capricious" applications of state law. *Jeffers*, 497 U.S. at 780. In the "last reasoned decision by a state court," the California Court of Appeal pointed to four separate and distinct, non-accomplice sources (one being Petitioner's own written words) it believed sufficiently corroborated the accomplice-testimony. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Since the four sources of information were independent, and since those sources provided important details linking Petitioner with the crimes charged, the corroboration requirement of California Penal Section 1111 has been met. Thus, there was not an arbitrary or capricious application of state law.

In sum, because Petitioner fails to present a federal question, and because the application of state law was not arbitrary or capricious, Petitioner is not entitled to habeas relief on the basis of this claim.

**B.  Claim 2: Improper Jury Instructions regarding Accomplice-Witnesses in Custody**

Petitioner claims his federal constitutional rights to a fair trial and due process, as guaranteed by the Sixth, Fifth, and Fourteenth Amendments to the United States Constitution, were violated when the trial court instructed the jury not to consider why Raymond Pachecho and William Parra, both accomplices, were in custody. [Doc. No. 4.] Petitioner contends the jury instruction given addressing a witness's custodial-status - CALCRIM No. 337 - conflicted with and contradicted the jury instruction given pertaining to a witness's accomplice-status - CALCRIM No. 335. [Doc. No. 4.] More specifically, Petitioner alleges CALCRIM No. 337, which told jurors to "not speculate" about the reason the witnesses were in custody, undercut CALCRIM No. 335, which told jurors to treat accomplice-testimony with caution. [Doc. No. 4.]

The trial court instructed the jury using the following modified version of CALCRIM No. 337:

> When William Parra and Raymond Pacheco testified, they were in custody. Do not speculate about the reason. The fact that a witness is in custody does not, by itself, make a witness more or less believable. Evaluate the witness's testimony according to the instructions that I have given you.

1  [Lodgment No. 2, p. 13.]

2  The trial court also instructed the jury using the following modified version of CALCRIM No.
3  335:

4  > Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may
5  > not, however, arbitrarily disregard it. You should give that statement or testimony the weight you think it deserves after examining it with
6  > care and caution and in the light of all the evidence.

7  [Lodgment No. 2, p. 13.]

8  In its Answer, Respondent argues, because jury instructions are generally a matter of state
9  law, they do not present a federal question worthy of federal habeas relief. [Doc. No. 13, p. 11.]
10  Respondent further asserts this case is not one of the rare instances where a faulty jury instruction
11  rises to the level of a federal violation, as there was not a reasonable likelihood the jury applied
12  these instructions in a manner that violated Petitioner's federal constitutional rights. [Doc. No. 13,
13  p. 11.]

14  In his Traverse, Petitioner claims the contradictory instructions resulted in a lesser burden
15  of proof on the prosecution. [Doc. No. 26, p. 6.] Petitioner cites the prosecution's heavy reliance
16  on the "uncorroborated" testimony of these accomplices as "infecting" his trial with "such
17  unfairness that [his] resulting conviction is a denial of due process." [Doc. No. 26, pp. 6-7.]

18  Petitioner's claim that the aforementioned jury instructions violated his federal
19  constitutional rights fails because there was no reasonable likelihood the jurors applied the
20  disputed instructions in a manner that violated Petitioner's federal due process rights.

21  **1.  There is no reasonable likelihood the jurors applied the challenged instruction in a way that violated Petitioner's constitutional rights.**

22  When the constitutionality of a state jury instruction is challenged, federal courts
23  conducting a habeas review engage in a very limited analysis, inquiring only "whether there is a
24  *reasonable likelihood* that the jury has applied the challenged instruction in a way" that violates
25  the Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990) (emphasis added). Because jury
26  instructions are generally a matter of state law, federal habeas claims based on these instructions
27  only become federal violations when the "ailing instruction by itself so infected the entire trial
28  that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973);

*see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To support a finding that a jury instruction violated a party's federal constitutional due process rights, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Further, it is well established that the instruction "may not be judged in artificial isolation," but rather must be considered within the context of all the other jury instructions and the trial record. *Cupp*, 414 U.S. at 147.

Here, Petitioner's claim involves the interplay of two fairly standard and commonly used CALCRIM instructions: 337 and 335.[3] Both instructions deal with witness credibility issues by instructing the jury on how to treat the testimony of potentially problematic witnesses; 337 deals solely with the testimony of witnesses-in-custody, while 335 deals solely with the testimony of accomplice-witnesses. Although both instructions were slightly modified so as to fit the facts and circumstances of this case, the crux of the model instructions remained.

As per *Boyde*, when conducting a federal habeas review of a claim stemming from a jury instruction, a federal court is tasked with reviewing the state appellate record only for "whether there is a *reasonable likelihood* that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde*, 494 U.S. at 380. In the "last reasoned decision by a state court," the California Court of Appeal utilized a structural analysis of the language of CALCRIM No. 337 to conclude the instruction did not violate Petitioner's due process rights. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). In its unpublished opinion, the California Court of Appeal articulated that, because the language of CALCRIM No. 337 "expressly limits its application to the *custodial status* of a witness," there was no reasonable possibility the jury could have understood 337 as preventing them from applying CALCRIM No. 335, which focused solely on the jury's consideration of the "accomplice status" of a witness. [Lodgment No. 2, pp. 14-15 (emphasis added).]

---

[3] CALCRIM instructions are models adopted by the California Judicial Council, the policymaking body of the California state courts.

1  The instructions given at trial drew clear and distinct lines between any dual roles a witness
2  might play by instructing separately on the treatment of a witness's "custodial status" and its
3  "accomplice status." [Lodgment No. 2, pp. 14-15.] A plain-English reading of the instruction at
4  issue demonstrates its limited and restrictive nature. CALCRIM No. 337 admonished the jury by
5  stating the "fact that a witness is in custody does not, by itself, make a witness more or less
6  believable." In analyzing the language of the instruction, the state appellate court chose to
7  emphasize and italicize the word "itself." The appellate court's focus on the word "itself" is well-
8  reasoned. The contested instruction does not allow jurors to draw conclusions based *solely* on a
9  witness's custodial-status alone; however, the instruction still allows for, and even encourages, the
10 jury to consider other factors, such as a witness's accomplice status.

11 Considering the restrictive language and narrowly tailored scope of the disputed jury
12 instruction within the context of all of the instructions given at trial, there was no reasonable
13 likelihood jurors misconstrued or misapplied the instructions in a way that violated the Petitioner's
14 federal constitutional rights. Accordingly, Petitioner is not entitled to habeas relief on the basis of
15 this claim.

16 **C.    Claim 3: Joins-In Beneficial Arguments**

17 In his final claim, Petitioner joins in the arguments raised by co-defendant Fausto. [Doc.
18 No. 4, p. 8.] Without citing any federal authority, Petitioner cites to Rule 8.200(A)(5) of the
19 California Rules of Court and joins in "any arguments contained in the opening brief filed by co-
20 defendant Fausto that may be beneficial to him." [Doc. No. 4, p. 8.]

21 In its Answer, Respondent dismisses the Petition as failing to state a claim upon which
22 federal habeas relief can be granted. [Doc. No. 13, p. 12.] Although acknowledging that *pro se*
23 pleadings are given the benefit of liberal construction, Respondent contends that a "federal court is
24 not required to construct legal arguments for a pro se petitioner." [Doc. No. 13, p. 12.]
25 Accordingly, Respondent concludes Petitioner has not made any "claim of federal constitutional
26 error specific to him or his case." [Doc. No. 13, p. 12.]

27 In his Traverse, previously unaware that there is no federal analog to the California rule
28 allowing petitioners to generally join in arguments raised by co-defendants, Petitioner elaborates

on the specific claim which he intended to incorporate by reference. [Doc. No. 26, p. 7.] Specifically, he is claiming his right to obtain witnesses on his behalf, as protected by the Sixth Amendment, was violated when Katrina Lopez was prevented from testifying at trial. [Doc. No. 26, p. 7.]

Petitioner's claim under the heading of his third ground for relief fails because he fails to state a claim worthy of federal habeas relief in his original petition.

### 1.     Petitioner fails to state a claim deserving of federal habeas relief.

Petitioner's third claim for federal habeas relief consists of two sentences incorporating by reference the arguments of a co-defendant found in said co-defendant's opening brief in state appellate court. By joining in and adopting "any" arguments that might be beneficial to him, Petitioner fails to articulate a claim, and underlying supporting facts, specific to himself. Further, Petitioner tasks the Court with picking and choosing from another party's state court brief which claims might be "beneficial to him" in his federal habeas petition. This fails the minimal pleading requirements for *pro se* prisoners seeking federal habeas relief.

Pleadings from a *pro se* prisoner are meant to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("[T]he allegations of the pro se complaint . . . [are held] to less stringent standards than formal pleadings drafted by lawyers."); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) ("In civil rights cases, where the plaintiff is pro se, we have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt."). Despite this liberal construction, *pro se* petitioners are nevertheless bound by the most basic rules of procedure with respect to their pleadings. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other [civil] litigants."). Further, this more relaxed pleading standard does not require federal courts to construct legal arguments for *pro se* petitioners. *See e.g. Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993). At a most basic level, federal habeas petitioners must allege facts in their petitions that sufficiently point to a "real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254 (1976)).

Here, based on the four-corners of the Petition, there is no possibility of constitutional

error. In the Petition, no discernable allegations are stated and no federal law is cited. Rather, Petitioner makes reference to arguments previously asserted by a co-defendant, provides the court with said co-defendant's state appellate case number, and provides a citation to a provision of the California Rules of Court allowing this type of incorporation by reference by petitioners seeking habeas relief in California courts. Although Petitioner later elaborates in his Traverse with more specificity regarding which of his co-defendant's arguments he intended to join, this elaboration comes too late. "[A] Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

Accordingly, Petitioner's claim that the denial of his right to call witnesses on his behalf fails because it was procedurally defective and fails to state facts sufficient to allege a federal constitutional violation.

## V.  CONCLUSION

For the reasons stated herein, all three grounds for relief asserted by Petitioner fail. Accordingly, his Petition for Writ of Habeas Corpus by a Person in Custody is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 14, 2011

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court